

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0377-24, 0378-24

### THE STATE OF TEXAS

### v.

### ERIK RODRIGUEZ, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## BEXAR COUNTY

SCHENCK, P.J., delivered the opinion of the Court in which RICHARDSON, NEWELL, KEEL, and PARKER, JJ. joined. YEARY, J. filed a concurring opinion. FINLEY, J. filed a concurring opinion. MCCLURE, J. concurred. WALKER, J. dissented.

## <u>OPINION</u>

We withdraw the original opinion delivered on May 14, 2025, and substitute this corrected opinion.

This case presents a Fourth Amendment question arising from the seizure of Appellee's cell phone. We are asked to determine if the court of appeals applied the proper standard of review. We conclude it did not. We also conclude the plain view doctrine validated the seizure of Appellee's cell phone and pretermit consideration of the remaining issues raised by the parties.

## BACKGROUND

This case stems from a domestic violence incident involving Appellee's friend, Jeremiah Gonzalez and Gonzalez's girlfriend. The girlfriend reported the incident to the San Antonio Police Department ("SAPD"). At the time, Appellee was employed as an officer with SAPD. Shortly thereafter, Gonzales confronted his girlfriend about having made the report and assaulted her again. The girlfriend contacted SAPD to report the assault and the apparent leak of her initial report.

After receiving this additional complaint, SAPD Detective Aisha Jackson obtained a warrant for Gonzalez's phone. A subsequent search of Gonzalez's phone revealed incriminating text messages between Gonzalez and a phone number listed in SAPD personnel records as belonging to Appellee, as well as a $100 CashApp payment from Gonzalez to that same number.

Detective Jackson then obtained, from a magistrate, a warrant to seize "[a]ny type of cellular device or cellular communication device" of Appellee's. The next day, Detective Jackson went to Appellee's normal place of work during his

regularly-scheduled morning roll call and observed Appellee holding his cell phone. At this point, she informed him of the warrant. During this same conversation, he offered up the phone, and confirmed its number was the same number reflected in the SAPD personnel records and the earlier search of Gonzalez's phone.

Detective Jackson then invited Appellee for an interview at the downtown police headquarters, and he did not object. Before the interview, she asked Appellee for consent to search the phone. Appellee consented and signed a written form confirming his consent. After the interview, Detective Jackson performed an initial manual search of Appellee's phone and found the incriminating correspondence and payment related to the domestic violence investigation.

Following this basic search, Detective Jackson obtained a second warrant specific to Appellee's personal cell phone, this time from a district judge, apparently in an effort to comply with Article 18.0215 of the Texas Code of Criminal Procedure, and a crime analyst then searched the phone "without limitation." Based on further information the crime analyst's search uncovered, Detective Jackson sought and obtained six more warrants authorizing the search of Appellee's home and personal property, leading to the seizure of additional devices and accounts and ultimately leading to Appellee's indictments for possession of child pornography, misuse of public information, and bribery.

Appellee filed a motion to suppress his statements and all tangible evidence seized, arguing that the original warrant was overbroad, thus everything flowing from it was fruit of the poisonous tree. The State responded that all evidence was legally obtained pursuant to the plain view doctrine, Appellee's consent, or the independent source doctrine.

The trial court held an evidentiary hearing and granted Appellee's suppression motion, rejecting the State's contentions and concluding the first warrant lacked probable cause despite Appellee's phone number matching that reflected in the SAPD personnel records. The trial court further held that the plain view doctrine did not authorize Detective Jackson's seizure of the cell phone. And, finally, the trial court found Appellee's consent to the original search failed to attenuate what the trial court perceived as the taint of illegality of the original warrant. Likewise, the trial court found the same failing with the second warrant and any evidence obtained pursuant to it.

The State timely appealed. The Fourth Court of Appeals affirmed, deferring, among other things, to the trial court's conclusion that the plain view doctrine failed to validate Detective Jackson's original seizure of the cell phone. *State v. Rodriguez*, No. 04-22-00727-CR, 2024 WL 1642931, at *6 (Tex. App.—San Antonio Apr. 17, 2024) (mem. op., not designated for publication). Justice Patricia Alvarez dissented and would have reversed under the plain view doctrine. *Id*. at *6 (Alvarez, J.,

dissenting) (citing *LopezGamez v. State*, 622 S.W.3d 445, 457 (Tex. App.—Fort Worth 2020, pet. ref'd).

## ANALYSIS

### I.    Standard of Review

We begin with the standard of review.  The court of appeals applied an abuse of discretion standard and upheld the trial court's ruling, finding "on this record, reasonable minds could disagree whether the incriminating nature of the phone in [Appellee's] hand was immediately apparent.  Because the trial court's ruling is not outside the zone of reasonable disagreement, we must overrule the State's contentions to the contrary."  *Id.* at *4.  This Court has previously held "although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) (citing *Ornelas v. United States*, 517 U.S. 690, (1996)). Application of the plain view doctrine is thus typically presented as a question of law, and therefore reviewed *de novo*. *Guzman*, 955 S.W.2d at 88-89.

### II.    Detective Jackson's Seizure was Authorized Under the Plain View Doctrine

Pretermitting any debate over the legality of the initial warrant, we believe that Detective Jackson's action in taking possession of the phone was authorized pursuant to the plain view doctrine. As a result, neither Appellee's subsequent consent to Detective Jackson's initial search nor the evidence obtained by the subsequent warrant can be challenged as tainted by that seizure.

The plain view exception arises if three requirements are met. First, law enforcement must be lawfully present where the object can be "plainly viewed." *Horton v. California*, 496 U.S. 128, 136 (1990). Second, the "incriminating character" of the object in plain view must be "immediately apparent" to law enforcement. *Id*. (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (plurality opinion)). Finally, law enforcement must have the right to access the object, meaning that the intrusion into Appellee's expectation of privacy "is justified by a warrant or by an exception . . . or by an extraneous valid reason for the officer's presence." *Coolidge*, 403 U.S. at 467.

Only the second prong is in dispute in this case. The second element of the plain view doctrine requires a showing of probable cause, though actual knowledge of incriminating evidence to be obtained is unnecessary. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). When Detective Jackson encountered Appellee at his morning roll call, she knew that Gonzalez had communicated with Appellee at a cell number reflected in SAPD personnel files, that Gonzalez's girlfriend had

been beat by him in retaliation for her reports of previous abuse to SAPD and could see Appellee's cell phone in his hand.

The plain view doctrine's authorization of a warrantless seizure of evidence serves as an important law enforcement tool to, among other things, permit immediate seizure of evidence of probable criminality before any possible loss or destruction. *See Kentucky v. King*, 563 U.S. 452, 472 (2011). Regardless of the warrant or any debate over its legal sufficiency, Detective Jackson had "probable cause to associate the property with evidence of criminal activity" by an SAPD officer that may have been compromised or lost by any delay. *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 69 (1992). She was also aware of apparent ongoing communication between Appellee and Gonzalez, resulting in physical injury to Gonzalez's girlfriend.

The Fourth Amendment does not require a police officer to have certainty that a suspect's property is itself illicit or probative of a crime to take temporary custody of it, but, rather, only probable cause to believe that the property is associated with criminal activity. *See Texas v. Brown*, 460 U.S. 730, 741; *Payton v. New York*, 445 U.S. 573, 587 (1980); *Colorado v. Bannister*, 449 U.S. 1, 3–4 (1980).

Therefore, Detective Jackson did not need to be certain the phone in Appellee's hand that day was the exact cell phone associated with evidence of a

crime; instead, she only needed probable cause to associate Appellee's personal cell phone with criminal activity.

To the extent the trial court found Detective Jackson's asking Appellee if the phone was his during their initial encounter as further investigation necessary to establish probable cause for the seizure, it misapplied the plain view doctrine. The question was immaterial to the existence of probable cause at that time. In viewing the cell phone in Appellee's hand, Detective Jackson was "merely looking at what [was] already exposed to view, without disturbing it," which is "not a search for Fourth Amendment purposes." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) (holding that a pre-seizure search occurred where officers moved stereo equipment in order to locate serial numbers to determine if equipment was stolen). It was reasonable for Detective Jackson to believe the phone Appellee had in his hand at his place of work was probably that same phone listed by Appellee in his personnel records and linked to the communications uncovered in Gonzalez's phone. Nothing more was required.

## CONCLUSION

Thus, we reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

Delivered: July 30, 2025

Do Not Publish